**Antuan PULLIAM, Plaintiff,**

v.

**UNITED AUTO WORKERS,**
**Defendant.**

No. 04–C–123–C.

United States District Court,
W.D. Wisconsin.

Jan. 31, 2005.

Jeff Scott Olson, Madison, WI, for Plaintiff.

Sandra Graf Radtke, Murphy Gillick Wicht & Prachthauser, Waukesha, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

This is a civil suit for monetary relief in which plaintiff Antuan Pulliam alleges that defendant United Auto Workers violated its duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 158. Plaintiff contends that defendant failed to prosecute a grievance on his behalf because of his race and in retaliation for his complaints about racial harassment at his place of employment. Jurisdiction is present. 28 U.S.C. § 1331.

This matter is before the court on defendant's motion for summary judgment as well as its motion to strike the affidavit of William Slawson. Defendant's motion to strike will be denied as unnecessary and its motion for summary judgment will be granted. Plaintiff's claim is barred by the applicable statute of limitations because plaintiff did not initiate this lawsuit within six months of the time he reasonably should have known that defendant would take no further action with respect to his grievance. Alternately, defendant is entitled to summary judgment because plaintiff has failed to produce evidence that defendant's decision to drop plaintiff's grievance was discriminatory.

Before turning to the facts, I will address defendant's motion to strike. Plaintiff filed an affidavit given by William Slawson with his opposition to defendant's motion for summary judgment. Defendant argues that the court should strike the affidavit for its failure to comply with Fed.R.Civ.P. 56(e)'s mandate that affidavits be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Further, defendant argues that plaintiff's counsel submitted Slawson's affidavit in bad faith and it requests an award of costs and fees associated with its motion to strike, pursuant to Fed.R.Civ.P. 56(g). Defendant's motion will be denied as unnecessary because this court's procedures regarding summary judgment state clearly that the court will disregard proposed findings of fact not supported by admissible evidence. Defendant's request for an award of sanctions will be denied as well; although parts of the Slawson declaration would not be admissible in evidence, I am not persuaded that plaintiff submitted the affidavit in bad faith or for the purpose of delay.

From the parties' proposed findings of fact and the record, I find the following to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Antuan Pulliam is a former employee of General Motors who worked at its Janesville, Wisconsin facility. Before the events giving rise to this lawsuit, plaintiff had been terminated and re-hired by General Motors pursuant to a "last chance agreement" negotiated by defendant United Auto Workers union, the union representing plaintiff. (Typically, the practice of negotiating a terminated employee's return subject to a last chance agreement begins when defendant files a grievance with General Motors.) Plaintiff signed his last chance agreement on January 31, 2000. The agreement was to be effective for one year and provided in part that "any future violation of any shop rule including absence, during the life of this agreement, will result in discharge." Roger Anclam Aff., dkt. # 14, Exh. 2.

While at work on April 13, 2000, plaintiff had an altercation with another General Motors employee. That day, plaintiff (who I assume is black, although neither party proposed this as fact) overheard several co-workers making racially derogatory comments. Plaintiff overheard a co-worker say, "The nigger's daddy got him back." (Plaintiff's father, Charles Brown, has worked for General Motors for approximately twenty-eight years, eighteen of which have been at the Janesville plant.) In addition, David Dohner, a white co-worker, called plaintiff a "nigger" at some point during the day. (Dohner is the brother of John Dohner, Jr., the current union shop chairman. Shop chairman is a high ranking post in defendant's local chapter at the Janesville plant; the chairman has authority over twenty-one district committeemen, four zone committeemen and two committeemen at large. John Dohner, Jr. was not the shop chairman at the time of the altercation between his brother and plaintiff; he became shop chairman in June 2002.) Plaintiff did not react to the comments until the end of the day when he told one of his co-workers to leave him alone. The co-worker made another racial comment to which plaintiff responded by putting his hands around the neck of the employee and pushing him back into a cabinet. When plaintiff realized what he had done he released the co-worker and walked to an office located at the front of the plant. Plaintiff heard laughter coming from an adjacent office and became paranoid, thinking that everything at General Motors was a "racist joke." Despite several attempts by his supervisor to convince him to stay at work, plaintiff left the plant. The next day, plaintiff reported to the plant's front office. A union representative shuttled between plaintiff and unidentified members of management located in another office. Ultimately, plaintiff was told that he had been fired for leaving the plant without the permission of his union representative.

Defendant filed a grievance protesting plaintiff's termination on his behalf. Defendant pursued the grievance to the third step of the grievance procedure outlined in the collective bargaining agreement. At that point, Roger Anclam, the sub-regional director of UAW region 1, decided not to pursue the grievance further because he believed it was clear that plaintiff had violated a shop rule as well as the terms of his last chance agreement and that as a result, defendant would not have a strong possibility of prevailing on the grievance. (John Dohner, Jr. did not play any part in the decision to drop the grievance.) On April 23, 2001, defendant sent plaintiff a certified letter at his last known address, informing him that defendant had withdrawn his grievance officially and that it was no longer active. Defendant keeps the addresses of its members in a computer system and tells its members to notify defendant of any change in their addresses.

Anclam and John Dohner, Jr. met with plaintiff and his father in February 2003. Anclam told plaintiff that defendant had dropped his grievance some time earlier but would ask General Motors to reinstate plaintiff during an upcoming collective bargaining session. (The parties dispute whether Anclam told plaintiff that his grievance would be reinstated at this meeting.) Anclam asked General Motors to reinstate plaintiff three times but the company refused. No one from defendant notified plaintiff that the efforts to have him reinstated were unsuccessful until 2004. Plaintiff waited until March 2004 to file his lawsuit against defendant because he thought that he might be reinstated during the collective bargaining process.

## OPINION

To prevail on a motion for summary judgment, the moving party must show that even when all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McGann v. Northeast Illinois Regional Commuter Railroad Corp.*, 8 F.3d 1174, 1178 (7th Cir.1993). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party will not escape summary judgment in an employment discrimination case "simply because issues of motive or intent are involved" unless he produces evidence of discriminatory motive. *Cliff v. Bd. of School Commissioners of the City of Indianapolis, Indiana*, 42 F.3d 403, 409 (7th Cir.1994) (internal citations and quotations omitted).

Plaintiff contends that defendant's failure to pursue his grievance was discriminatory and thus, constituted a breach of its duty of fair representation in violation of 29 U.S.C. § 158. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."). Defendant argues that plaintiff's claim is barred by the applicable statute of limitations and that plaintiff has not offered any evidence from which a jury could find that the union's actions with respect to plaintiff were arbitrary, discriminatory or done in bad faith.

### A. *Statute of Limitations*

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that an employee's "hybrid" suit against an employer for breach of a collective bargaining agreement and a union for breach of its duty of fair representation was subject to the six-month statute of limitations found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). This is not a "hybrid" suit because plaintiff does not assert a claim against General Motors for breach of a collective bargaining agreement together with its claim against defendant. Nonetheless, the parties agree that the six-month statute of limitations still applies, as both the Eighth and Ninth Circuits have held. *Skyberg v. United Food and Commercial Workers International Union*, 5 F.3d 297 (8th Cir.1993); *Kalombo v. Hughes Market, Inc.*, 886 F.2d 258 (9th Cir.1989). The statute of limitations begins to run " 'when the claimant discov-

ers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation].'" *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir.1999) (quoting *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983)). "Application of this general rule turns on the context in which the claim arose." *Lucas v. Mountain States Telephone & Telegraph*, 909 F.2d 419, 421 (10th Cir.1990). In this case, the clock on plaintiff's claim began to run from the time he discovered, or reasonably should have discovered, that defendant would not take further action on his grievance. *Chapple v. National Starch & Chemical Co.*, 178 F.3d 501, 505 (7th Cir. 1999). The determination of the accrual date involves an objective inquiry; plaintiff's asserted actual knowledge is not determinative if he did not act reasonably and "in effect, closed [his] eyes to evident and objective facts concerning accrual of [his] right to sue." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994).

 It is undisputed that defendant sent a certified letter to plaintiff's last known address on April 23, 2001, stating that the grievance had been withdrawn and was no longer active. Defendant keeps the addresses of its members in a computer system and tells members to notify defendant of any change in their addresses. Plaintiff says that he does not recall having been told to keep defendant apprised of changes in his mailing address. However, this does not put into dispute the fact that the notification requirement existed. *Cf. Posey v. Skyline Corp.*, 702 F.2d 102, 105–06 (7th Cir.1983) (plaintiff's statement that he never saw a posted notice "not the same as an averment that the notice was not in fact conspicuously posted"). The record does not indicate whether plaintiff received the letter. Plaintiff did not propose lack of receipt as a fact, but I am assuming that to be the case

because plaintiff asserts that he did not learn that his grievance had been dropped until the February 2003 meeting with Roger Anclam and John Dohner, Jr. In any event, the record is completely devoid of any evidence of action taken with respect to plaintiff's grievance, either by plaintiff or defendant, from April 2001 to February 2003, a span of twenty-two months. Plaintiff has not proposed as facts any efforts he made to learn the status of his grievance during this time and he does not make any effort to explain his lack of action during this period in his brief. Even if I assume that he did not receive the April 2001 letter, the lack of any communication from defendant for almost two years was a clear indication that defendant may have breached its duty to him. *Christiansen*, 178 F.3d at 915 ("[t]he fact that the union did not directly notify Christiansen that it failed to file her grievance in 1991 is not itself a bar to accrual"); *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 327 (7th Cir.1992) ("Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation."). Plaintiff "cannot be allowed to sit back and claim lack of notice in circumstances such as these" because he had the duty to exercise reasonable diligence, not defendant. *Metz*, 715 F.2d at 304. It is unnecessary to pinpoint exactly when defendant's inactivity started the six-month clock. As the district court noted in *Sizer v. Rossi Contractors*, No. 98 C 6967, 2000 WL 116081 (N.D.Ill. Jan. 24, 2000), the twenty-two months that passed between defendant's letter and the February 2003 meeting "certainly surpassed even the most generous estimate." I conclude that plaintiff's claim is barred by the statute of limitations because he failed to initiate this lawsuit within six months of the time he reasonably should have known that no further action would be taken on his grievance.

## B. *Breach of Duty*

■ Because the statute of limitations is not a jurisdictional bar, I will address briefly the merits of plaintiff's claim. As noted earlier, a union breaches its duty of fair representation if its actions are arbitrary, discriminatory or in bad faith. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir.2003). To survive a motion for summary judgment, plaintiff must produce evidence from which a jury could infer that defendant's actions were either arbitrary, discriminatory or in bad faith. *Filippo v. Northern Indiana Public Service Corp.*, 141 F.3d 744, 748–49 (7th Cir. 1998). Plaintiff must show that defendant engaged in intentional misconduct; ordinary negligence and gross negligence are insufficient. *Adams v. Budd Co.*, 846 F.2d 428, 432–33 (7th Cir.1988). Plaintiff's sole argument is that defendant's decision not to pursue plaintiff's grievance was discriminatory; thus, I will not examine the decision for arbitrariness or bad faith.

■ A court considering whether a union has acted in a discriminatory manner must examine the motives of the union officials responsible for the challenged decision. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir.1997). In this case, defendant submitted an affidavit from Richard Anclam, the union official that decided to drop plaintiff's grievance. Anclam avers that he pursued plaintiff's grievance to the third stage of its grievance procedure and that he decided not to pursue plaintiff's grievance any further because it was clear to him that plaintiff had violated a shop rule and the terms of his last chance agreement and defendant had little likelihood of prevailing.

■ Plaintiff never addresses Anclam's reasons for dropping the grievance in his brief; in fact, he never mentions Anclam at all. Moreover, plaintiff admits that he left the plant without permission on April 13, 2000, in violation of shop rules and his last chance agreement. Plaintiff's theory is that he did not receive the same representation given on behalf of several white employees who were not discharged after breaking workplace rules while subject to last chance agreements. Plt.'s Br., dkt. # 15, at 5. In support of this theory, plaintiff submitted an affidavit in which William Slawson, a union representative at the Janesville facility, stated that several white employees who violated work rules while subject to last chance agreements were not fired. In addition, Slawson stated that John Dohner, Jr. is racist. This evidence does not create a dispute of fact regarding Anclam's motives for dropping plaintiff's grievance. Slawson's statement that John Dohner is racist is irrelevant to this case because it is undisputed that Dohner was not involved in the decision to drop plaintiff's grievance; even if the statement were relevant, it is note based on any evidence and therefore is of no value to plaintiff's case. The information regarding the white employees is irrelevant because plaintiff has not shown that these other employees were in the same or similar situations as plaintiff. Aside from Slawson's non-specific claims that he dealt with these employees on behalf of the union, plaintiff has produced no information concerning the actions that were taken by defendant on behalf of these employees, such as whether defendant filed grievances on their behalf and, if so, who within defendant made the decision to file them and whether the grievances were settled or arbitrated. Plaintiff provides no answers to these questions. Without knowing what, if anything, defendant did to prevent General Motors from firing these white employees, I cannot find that their situations are relevant to defendant's actions in this case. When the information provided by Slawson is disregarded, little remains of plaintiff's case other than speculation that fails to call into question Anclam's reasons for

dropping plaintiff's grievance. Although defendant failed to take plaintiff's grievance to arbitration, it was under no duty to do so because a union has "discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal*, 349 F.3d at 369. In light of plaintiff's failure to produce any evidence that would support a reasonable inference of discrimination, defendant is entitled to summary judgment.

## ORDER

IT IS ORDERED that defendant United Auto Workers' motion to strike the affidavit of William Slawson, dkt. # 20, is DENIED as unnecessary. FURTHER, IT IS ORDERED that defendant's for summary judgment, dkt. # 10, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.